**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| SAM SAIHUNG LO,<br><br>                 Plaintiff,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION *doing business as* Fannie Mae,<br><br>                 Defendant. | Case No. 2:12-CV-01411-RFB-VCF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 42)** |

## I. INTRODUCTION

Presently before the Court is Defendant Federal National Mortgage Association's motion for summary judgment. ECF No. 42. Plaintiff Sam Saihung Lo alleges five state law claims stemming from his "as-is" purchase of a mold-infested condominium from Fannie Mae. Because the Court holds that Lo's NRS 113 waiver is unenforceable, Lo's claim for breach under that chapter will survive. Because the Court finds that genuine issues of material fact remain as to whether Fannie Mae misrepresented conditions of the subject property to Lo and whether Lo justifiably relied on those representations, Lo's claims for deceptive trade practices/consumer fraud and negligent misrepresentation will also survive. Additionally, because the court finds that a genuine issue of material fact exists as to whether Lo's justified expectations under the contract were denied, Lo's claim for breach of the implied covenant of good faith and fair dealing will survive. However, because Lo has failed to identify a contract provision breached by Fannie Mae, the Court will grant Fannie Mae's motion with respect to Lo's claim for breach of contract.

. . .

. . .

**II. BACKGROUND**

The Court finds the following facts to be undisputed. In October 2011, Lo purchased a mold-ridden condo located at 7950 W. Flamingo Road, no. 2140 in Las Vegas, Nevada, (the "subject property") from Fannie Mae. Jason Abrams of Luxury Homes of Las Vegas was the listing real estate agent and managed the subject property prior to the sale. ECF No. 74 Ex. 1 p. 8-9.

The events leading up to the sale were as follows. On August 10, 2011, Abrams requested a bid from NuTone Construction Company for an emergency water extraction for flooding at the subject property. ECF No. 74 Ex. 11. The next day, a representative of NuTone informed Abrams that the source of the water damage was a broken angle stop located in the master bathroom and that the leak had also damaged four adjacent units. ECF No. 74 Ex. 12 p. 2. In a letter dated August 15, 2011, the attorney for the condominium HOA complained to Abrams about the damage caused to the adjacent units. The attorney informed Abrams that the HOA had no liability for the damage, and that all affected parties, including the HOA, would be instructed to seek remuneration from Fannie Mae. ECF No. 74 Ex. 18 p. 3.

Abrams requested bids from NuTone to dry out and repair all five affected units. ECF No. 74 Ex. 13 p. 2. NuTone submitted bids to Abrams on August 12, 2011, and August 16, 2011. Most importantly, the bid for Unit "2140/1140"[1] indicated under the section entitled "Comments/Other Repairs" that "[d]iscoloration growth has begun in the master bath and bedroom." Id. Ex.14 p. 14 (emphasis added). Abrams retained NuTone to repair the damage to the subject property only. NuTone in turn hired Restoration Contract Services to assist with the repairs. ECF No. 74 Ex. 10. In August and September of 2011, NuTone and Restoration Services performed various repairs on the subject property. ECF No. 74 Ex. 9, Ex. 10.

Meanwhile, Fannie Mae's apparent refusal to pay for repairs to the other affected units garnered the attention of a United States Senator and the local news. On September 8, 2011, United States Senator Dean Heller of Nevada wrote to the HOA explaining that one of his constituent's units had suffered significant damage and that he had contacted a representative

---

[1] Unit 2140 is the subject property and unit 1140 is the unit located directly below it.

from Fannie Mae and Abrams Realty to no avail. ECF No. 74 Ex. 19. The next day, ABC Channel 13 (KTNV) contacted the HOA and requested a "mold report" pertaining to one of the affected units. ECF No. 74 Ex. 20. The HOA then sent letters to both Abrams and Fannie Mae with the subject line "7950 W. Flamingo Road # 2140-Mold Report," seeking their permission to release the report to the media. ECF No. 42 Ex. 21.

In the fall of 2011, Lo became interested in purchasing the subject property. On September 23, 2011, Abrams informed Lo's agent that there were multiple offers on the property and that the property had "suffered water damage due to a faulty angle stop in the master bathroom that has been remedied." ECF No. 42 Ex. 1. On September 27, 2011, Lo submitted his offer on the property via a completed Residential Purchase Agreement. ECF No. 42 Ex. 2. The Agreement contained a waiver of claims provision, which provided that at close of escrow the property would be sold "as is, where is" without any warranties or representations. Id. The next day, Lo hired a home inspection company to conduct a routine inspection. ECF No. 74 Ex. 34. The inspection company did not report any mold. Id. On September 27 and September 29, respectively, Lo signed a purported "Buyer's Waiver of NRS Chapter 13 SRPD Rights" and a Purchase Addendum containing additional waivers. ECF No. 74 Ex. 28, Ex 33. On October 3, 2011, Fannie Mae accepted Lo's offer by executing the Purchase Agreement and Purchase Addendum.[2] ECF No. 74 Ex. 33.

In October 2011, Restoration Services retained MSE Environmental Services to conduct a mold inspection at the subject property. ECF No. 74 Ex. 8. On October 13, 2011, MSE performed a visual inspection of the subject property and took air samples.[3] The visual inspection report indicated that the kitchen, master bath, and hallway exhibited "red flags" consistent with mold. Id. A final laboratory report prepared by MSE dated October 19, 2011, confirmed the presence of elevated levels of fungal spores. ECF No. 74 Ex. 8.

---

[2] Fannie Mae identifies September 27, 2011, the date that Lo signed the Purchase Agreement, as the date of contract formation. This assertion is contradicted by the record. The Purchase Agreement provides that the Agreement is not valid until accepted by the seller and the seller's signature is dated October 3, 2011. Therefore, the Court finds that the parties entered into the Purchase Agreement on October 3, 2011. ECF No. 42 Ex. 2 p. 12.

[3] Fannie Mae stated in its motion for summary judgment that the air samples were not taken until October 18th. Based on the identical MSE-prepared lab reports submitted by both parties, the Court finds that the air samples were in fact taken on October 13th. ECF No 74 Ex. 8 p. 25.

Eight days later, on October 27, 2011, escrow closed. ECF No. 74 Ex. 25. When Lo took possession of the condo on November 4, 2011, he discovered that the condo was infested with mold. ECF No. 74 p. 13. On November 8, 2011, Lo wrote Fannie Mae and Abrams seeking to rescind the sale. Neither Abrams nor Fannie Mae responded to Lo's request. ECF No. 74 p. 14, Ex. 35 ¶ 25. Lo then filed suit, alleging: (1) Breach of NRS 113.150 and related sections; (2) Deceptive Trade Practices/Consumer Fraud; (3) Breach of Contract; (4) Breach of the Contract-Based Implied Covenant of Good Faith and Fair Dealing; (5) Negligence/Negligent Misrepresentation. Fannie Mae moved for summary judgment on all of Lo's claims. ECF No. 42. Lo filed a response in opposition. ECF No. 74. Fannie Mae did not file a reply. The Court heard oral argument from the parties and this order follows.

**III. LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

**IV. DISCUSSION**

**A. Breach of NRS 113.150 and Related Sections**

Nevada Revised Statutes Section 113.130 requires a seller of real property to make certain disclosures about the condition of the property, including any known defects, prior to

1  conveyance. The Real Estate Division of the Department of Business and Industry prescribes the
2  format and the contents of these disclosures. NRS 113.120. It accomplishes this by requiring use
3  of a Seller's Real Property Disclosure (SRPD) Form. Seller's Real Property Disclosure Form,
4  Department of Business and Industry Nevada Real Estate Division,
5  http://red.nv.gov/uploadedFiles/rednvgov/Content/Forms/547.pdf.

6  Effective October 1, 2011, the Nevada legislature revised NRS 113.130 to make the
7  seller's disclosure requirements non-waivable. See SB 314, 2011 Ch. 456 §§ 34, 37 p. 2832-34.
8  As amended, NRS 113.130(3) provides: "A seller of residential property may not require a
9  purchaser to waive any of the requirements of subsection 1 as a condition of sale or for any other
10 purpose."  Prior to the amendment, a buyer could waive his right to receive the seller's
11 disclosures provided that the waiver was in writing and notarized.

12 Fannie Mae argues that Lo's claim for violations of NRS 113.150 and related sections
13 fails because Lo signed the NRS 113 waiver prior to the effective date of the Amendment.
14 Therefore, Lo's waiver is valid and his claim is barred. ECF No. 42 p. 9.  Alternatively, Fannie
15 Mae argues that even if Lo's waiver is invalid, Abrams made the required disclosures when he
16 informed Lo's agent that the property had suffered water damage. ECF No. 42 p. 10-11.  Lo
17 argues that his waiver is invalid because of the October 1, 2011 amendment, and Fannie Mae is
18 liable because it failed to make the required disclosures. ECF No. 74 p. 18-23.

19 At the outset, the Court notes that both the sale and conveyance of the property occurred
20 after October 1, 2011.  Furthermore, the deadlines for the required disclosures under NRS 113
21 are based upon the date of conveyance.  Since the property was not conveyed until October 27,
22 Fannie Mae's obligations were performable within the amended statutory framework. The Court
23 finds that Lo's waiver was invalid because, as of October 1, 2011, Fannie Mae had a non-
24 waivable duty to make the required disclosures by no later than October 17—10 days before
25 conveyance of the property.  NRS 113.130(1)(a).  If, after service of the completed form, Fannie
26 Mae discovered any new defect or discovered that any existing defect had worsened, Fannie Mae
27 had a non-waivable duty to inform Lo of these additional facts prior to the date of conveyance on
28 October 27.  NRS 113.130(1)(b).  The Court further finds that the Purchase Agreement and

Addendum are enforceable notwithstanding the unenforceability of the NRS 113 waiver provisions because the Purchase Addendum contains a severability clause. ECF No. 74, Ex. 33 ¶ 26.

The parties do not dispute that Fannie Mae did not serve a completed SRPD on Lo. Abrams's September 23, 2011 e-mail disclosing that the property had suffered water damage that had been remedied is not an unaltered version of the SRPD promulgated by the Real Estate Division. As of October 1, 2011, the most current SRPD specifically required disclosure of any "previous or current fungus or mold" and "[a]ny other conditions or aspects of the property which materially affect its value or use in an adverse manner." Nev. Real Estate Div. SRPD revised 10/1/11; ECF No. 74 Ex. 29. Moreover, the SRPD not only requires a seller to disclose previous or current water damage, but additionally requires the seller to disclose any current or previous fungus or mold. Disclosing water damage is thus not interchangeable with disclosing mold for SRPD purposes.

Fannie Mae's motion for summary judgment on Lo's claim for breach of NRS 113.150 and related sections (Claim One) is denied, because Fannie Mae was required to serve a completed SRPD on Lo and Lo has set forth sufficient evidence to support his claim that Fannie Mae violated the statute by failing to do so,

**B. Deceptive Trade Practices/Consumer Fraud**

Fannie Mae argues that it is not liable for deceptive trade practices/consumer fraud because it did not misrepresent any known condition of the property, obscure any prior damage, or otherwise misrepresent the subject property. ECF No. 42 p. 12. Lo argues that Fannie Mae engaged in deceptive trade practices/consumer fraud by failing to disclose the existence of mold – a condition known to Fannie Mae that would affect Lo's use of the property. ECF No. 74 p. 23.

A person alleged to be a victim of a deceptive trade practice may bring a consumer fraud action. See NRS 41.600(1) and (2)(e). A claim for consumer fraud requires the plaintiff to prove: (1) an act of consumer fraud by the defendant; that (2) caused; (3) damage to the plaintiff. Picus v. Wal-Mart Store, Inc., 256 F.R.D. 651, 659 (D. Nev. 2009) (predicting how Nevada

courts would rule). Consumer fraud is "a deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." NRS 41.600(2)(e). NRS 598.0923(5)(A)(2) requires a seller of real property to disclose a "condition known to the seller that would affect the buyer's use of such property."

The Court finds that Lo has submitted evidence from which a reasonable jury could conclude that Fannie Mae knew about the mold and failed to disclose it. The Court finds that a jury could reasonably find that Abrams, Fannie Mae's agent, and Fannie Mae through its agent were aware of mold in the subject property. This could be inferred from several facts. First, and perhaps most significantly, a bid from NuTone submitted to Abrams indicated that "discoloration growth," an apparent reference to the mold growth, had begun in the unit. Second, MSE, one of the subcontractors conducting the remediation and repairs commissioned by Abrams and Fannie Mae conducted a visual inspection which revealed "red flags" consistent with mold growth 14 days prior to the close of escrow. And the lab report confirming the presence of mold was prepared 8 days prior to closing. While the Court does not find Abrams's knowledge of the mold or receipt of these reports to be undisputed, the Court finds that a jury could reasonably infer his knowledge of the condition based upon the high probability that these contractors and subcontractors would have immediately notified Abrams about the existence of a mold infestation in a unit he was managing and that they would not have waited over one week to notify him. The Court finds that there are genuine issues of material fact as to this claim. Lo has met his burden for summary judgment purposes and Fannie Mae's motion for summary judgment on Lo's consumer fraud claim (Claim Two) is accordingly denied.

**C. Breach of Contract**

Fannie Mae argues that Lo's breach of contract claim fails because Lo signed waivers exempting Fannie Mae from liability for mold and other defects and agreed to buy the property "as is, where is". When the property was sold to Lo "as-is" the contract was complete and there was no breach. ECF No. 42 p. 12. Lo argues that Fannie Mae breached the contract by failing to provide the SRPD, failing to disclose the mold, and failing to disclose the existence of the mold reports. ECF No. 74 p. 24.

To prevail on a breach of contract claim in Nevada, a plaintiff must prove: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach. Richardson v. Jones, 1 Nev. 405, 405 (Nev. 1865). "A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement." Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev. 2000).

The Court finds that Lo's breach of contract claim fails because Lo has failed to identify a contractual provision breached by Fannie Mae. Although Fannie Mae had a statutory duty to provide the SRPD, Fannie Mae was not contractually obligated to do so. Other courts have incorporated statutory duties into a contract where the statutory scheme expressly provides that the statute should be so incorporated, see e.g., Maykuth v. Adolph Coors Co., 690 F.2d 689, 694 (9th Cir. 1982) (interpreting Montana law), or where the contract expressly incorporates statutory requirements. NRS 113.150 gives a purchaser statutory remedies for a seller's failure to provide the disclosures, but it does not create a contractual duty. Thus, Fannie Mae's failure to provide the SRPD cannot form the basis for Lo's breach of contract claim.

Likewise, Fannie Mae was not contractually obligated to disclose the mold reports. Lo had a contractual right to request any reports, but there is no indication in the record that he exercised that right and that Fannie Mae breached the contract by refusing to provide the reports once requested. The language of the Purchase Addendum upon which Lo relies reads: "[A]n . . . environmental inspection report may have been prepared for the benefit of the Seller. Upon request, the Purchaser will be allowed to review the report . . . ." ECF No. 74 p. 26. This clause does not obligate Fannie Mae to disclose the existence of any report; rather, it simply obligates Fannie Mae to produce reports it has prepared *upon request* by the buyer.

Lo also relies on the Nevada Supreme Court's decision in Mackintosh v. Jack Matthews & Co., 855 P.2d 549, 553 (Nev. 1993), to argue that Fannie Mae had a contractual duty to disclose the mold. ECF No. 74 p. 25. While Mackintosh recognized a fraud-based duty to disclose facts adversely affecting a buyer's use of real property under certain circumstances, no breach of contract claim was before the court.

. . .

1  In light of the limited holding in Mackintosh, the Court declines to find that Fannie Mae had a
2  contract-based duty to disclose the existence of the mold to Lo.
3  Lo's claim for breach of contract (Claim Three) is dismissed, because Lo has not
4  identified a provision in the contract breached by Fannie Mae.

### D. Breach of the Contract-Based Implied Covenant of Good Faith and Fair Dealing

6  Fannie Mae argues that it cannot be liable for breach of the implied covenant of good
7  faith and fair dealing because Fannie Mae complied with the contract in good faith by
8  transferring the condo to Lo "as-is." ECF No. 42 p. 13.  Lo argues that Fannie Mae acted in bad
9  faith by, among other things, failing to provide Lo with an SRPD, otherwise failing to disclose
10 the mold and the mold report, falsely denying Lo the right to request, obtain, and review the
11 mold report prior to closing, falsely denying Lo the right to request additional repairs based upon
12 the SRPD, and falsely denying Lo the right to rescind the contract.  ECF No. 74 p. 27.

13 Under Nevada law, an implied covenant of good faith and fair dealing exists in every
14 contract.  Pemberton v. Farmers Ins. Exch., 858 P.2d 380, 382 (Nev. 1993).  The Nevada
15 Supreme Court has explained that "when one party performs a contract in a manner that is
16 unfaithful to the purpose of the contract and the justified expectations of the other party are thus
17 denied, damages may be awarded against the party who does not act in good faith."  Hilton
18 Hotels v. Butch Lewis Prod., 808 P.2d 919, 923 (Nev. 1991).  Reasonable expectations are to be
19 "determined by the various factors and special circumstances that shape these expectations." Id.
20 at 924.

21 The Court finds that Lo's claim for breach of the implied covenant of good faith and fair
22 dealing also survives summary judgment.  Lo had a "justified expectation" that Fannie Mae, and
23 in particular Abrams, would not actively misrepresent or conceal material facts prior to and then
24 in the course of performing under the contract.  Although Abrams's representation that the water
25 damage had been remedied was pre-contract, a reasonable jury could conclude that Abrams
26 perpetuated this misrepresentation even after a contract had been reached when he failed to
27 correct this misstatement.  Such a perpetuation of a material misrepresentation would clearly

violate Lo's justified expectation that Fannie Mae would not deliberately misstate material facts related to the terms of the contract.

Additionally, the Court finds that Abrams' continued arguable concealment of information about mold in the subject property also undermined Lo's ability to invoke his rights under the contract.  Specifically, the Purchase Addendum—drafted by Fannie Mae—includes language explicitly referencing mold and allowing Lo to receive copies of any inspection reports, but only upon Lo's request.  The affirmative misrepresentation by Abrams about the remediation of previous water damage and the subsequent failure to correct this misrepresentation impeded Lo's ability to invoke his rights under the contract regarding mold reports.  Moreover, while the parties dispute whether Abrams knew about the mold, as noted above, Lo set forth sufficient evidence from which a jury could reasonably conclude that he did.  It is very possible that a reasonable jury would find that, prior to the close of escrow, Abrams was aware of the MSE-prepared reports confirming the presence of mold in the subject property.  Thus, Lo has presented a genuine issue of material fact regarding whether his justified expectations under the contract were denied when Abrams failed to correct his statement that the water damage had been repaired.  Accordingly, the Court declines to grant Fannie Mae's motion for summary judgment on Lo's claim for breach of the implied covenant and fair dealing (Claim Four).

**E. Negligence/Negligent Misrepresentation**

Fannie Mae argues that Lo's negligence claims fail because Fannie Mae repaired the water damage and disclosed the damage to Lo.  Fannie Mae avers that it had no duty of disclosure, since it (and Abrams) were not aware of the mold.  ECF No. 42 p. 14 (citing Nelson v. Heer, 163 P.3d 420 (Nev. 2007)).  Additionally, Fannie Mae argues that Lo's negligence claims are barred by the economic loss doctrine.  Lo argues that Fannie Mae was indeed aware of the mold and failed to disclose it.  Lo further argues that his claim is not barred by the economic loss doctrine because Lo is seeking damages not only for the "loss of the benefit of the bargain," but also for, among other things, the cost of remediating the mold and the loss of the use of the subject property.  Id. at 28-29.

. . .

### 1. Negligence

To prevail on a negligence claim, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injuries; and (4) the plaintiff suffered damages. Sadler v. PacifiCare of Nev., 340 P.3d 1264, 1267 (Nev. 2014) (internal citation omitted).

The economic loss doctrine is a judicially created rule that seeks to draw the legal line between contract and tort liability. Terracon Consultants W., Inc., v. Mandalay Resort Grp., 206 P.3d 81, 87 (Nev. 2009). The doctrine generally bars unintentional tort actions when the plaintiff seeks to recover "purely economic losses." Id. at 86. "Purely economic loss is generally defined as the loss of the benefit of the user's bargain including pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property. Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev. 2000) (overruled on other grounds by Olson v. Richard, 89 P.3d 31, 31-33 (Nev. 2004)).

The Court finds that the economic loss doctrine bars Lo's negligence claim under a common-law negligence theory. Lo has not claimed personal injury or damage to property other than the subject property. Lo's claimed damages of remediating the mold and loss of the use of the subject property are purely economic losses for purposes of this doctrine. Lo's negligence claim is therefore dismissed.

### 2. Negligent Misrepresentation

The economic loss doctrine does not apply to actions for negligent misrepresentation. Negligent misrepresentation is a special financial harm claim for which tort recovery is expressly permitted. Terracon, 206 P.3d at 88. The Nevada Supreme Court has explained the tort of negligent misrepresentation as follows:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Barmettler v. Reno Air Inc., 956 P.2d 1382, 1387 (Nev. 1998). "[A] defendant may be found liable for misrepresentation even when the defendant does not make an express misrepresentation, but instead makes a representation which is misleading because it partially suppresses or conceals information." Epperson v. Roloff, 719 P.2d 799, 803 (Nev. 1986).

Lo has set forth sufficient evidence to support his claim for negligent misrepresentation. A reasonable jury could conclude that Fannie Mae, through its agent Jason Abrams, did not exercise reasonable care in communicating to Lo that the water damage to the subject property had been remedied. Alternatively, a jury could find that Abrams's representation was misleading because it partially suppressed or concealed information—mold in the subject property. As noted above, a genuine issue of disputed fact exists as to the extent of Abrams' and Fannie Mae's knowledge of the mold in the subject property. Lo has also set forth evidence from which a reasonable jury could conclude that Lo justifiably relied upon Abrams's statement that the water damage had been remedied. For these reasons, the court denies Fannie Mae's motion for summary judgment on Lo's negligent misrepresentation claim (Claim Five).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED**

Defendant Federal National Mortgage Association's motion for summary judgment, ECF No. 42, is GRANTED with respect to Claim Three for Breach of Contract.

The motion is DENIED with respect to Claim One for Breach of NRS 113.150 and Related Sections, Claim Two for Deceptive Trade Practices/Consumer Fraud, Claim Four for Breach of the Implied Covenant of Good Faith and Fair Dealing, and Claim Five for Negligent Misrepresentation.

DATED: August 6, 2015.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**